UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DESHAWN WARE, individually and on behalf of all others similarly situated,<br><br>        Plaintiff,<br><br>    v.<br><br>THE GOLDEN 1 CREDIT UNION, INC.,<br><br>        Defendant. | No. 2:18-cv-02926-JAM-EFB<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO COMPEL ARBITRATION** |

On November 6, 2018, Deshawn Ware ("Ware") filed a putative class action against The Golden 1 Credit Union, Inc. ("Golden 1") alleging wage and hour violations under both federal and state law. Compl., ECF No. 1. Ware invoked the Court's federal question jurisdiction for his claim arising under the Fair Labor Standards Act ("FLSA"); he invoked the Court's supplemental jurisdiction for his state law claims. Compl. ¶¶ 13, 15 (citing 28 U.S.C. §§ 1331, 1337).[1]

---

[1] This motion was determined to be suitable for decision without oral argument. E.D. Cal. L.R. 230(g). The hearing was scheduled for February 19, 2019.

1

In January 2019, two months after Ware filed his Complaint, Golden 1 filed a Motion to Compel Arbitration. Golden 1's motion argues that Ware's claims fall squarely within an enforceable arbitration agreement. Mot. at 4-7. Ware opposes the motion, maintaining both that the specific provision covering his claims is unenforceable and that the agreement as a whole is unconscionable. Opp'n at 10-15.

## I. FACTUAL ALLEGATIONS

Golden 1 hired Ware as a Customer Support Representative ("CSR") in January 2018. Compl. ¶ 18. As a condition of his employment, Ware was required to sign Golden 1's Arbitration Agreement. See Haines Decl., Ex. 1, ECF No. 14-2. The parties agree that both Ware and a Golden 1 representative signed this agreement. See Mot. to Compel Arbitration ("Mot.") at 2, ECF No. 14; Opposition ("Opp'n") at 4. In relevant part, the agreement states:

> By signing below, The Golden 1 Credit Union ("Golden 1") and Employee agree that all disputes related to Employee's employment by Golden 1, including but not limited to the termination of that employment, shall be submitted to binding arbitration with the American Arbitration Association ("AAA") and subject to the terms of this Arbitration Agreement. The arbitrator shall be required to determine all issues in accordance with the applicable laws of the State of California.... Such arbitration will be subject to the AAA rules as amended from time to time.
>
> * * *
>
> Employee specifically acknowledges that by executing this agreement, employee waives the right to a jury trial in a court of law as to all disputes concerning employee's employment, termination of employment, including, but not limited to, any statutory claims of discrimination and harassment, any claims under the

2

California Labor Code, the Age Discrimination in Employment Act, Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act of 1990, Sections 1981 through 1988 of Title 42 of The United States Code, The California Fair Employment and Housing Act, Government Code Sections 12940, Et Seq., as well as any other federal, state, or local constitution, law, ordinance, or regulation, or based on any public policy, contract, tort, or common law or any claim for wages, bonuses, benefits, costs, fees, or other expenses including attorney's fees, wrongful termination, breach of contract, or any damages of any kind arising out of the employment relationship including the termination of that relationship

* * *

By signing below, Employee acknowledges and agrees that [] Employee has read and understands the terms and consequences of this agreement . . . and in consideration for employment, Employee is knowingly and voluntarily entering this Agreement without any duress or undue influence.

Haines Decl., Ex. 1.

## II. OPINION

### A. Legal Standard

Section 2 of the Federal Arbitration Act ("FAA") states that arbitration agreements found in contracts related to interstate commerce "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. With Section 2, the FAA established "a national policy favoring arbitration" when contracting parties agree to settle disputes in that manner. Preston v. Ferrer, 552 U.S. 346, 353 (2008) (quoting Southland Corp. v. Keating, 465 U.S. 1, 10 (1984)). The FAA applies in both federal and state courts, and displaces any state law that "undercut[s] the enforceability of

3

arbitration agreements."  Id. (quoting Southland, 465 U.S. at 16).

   B.   Analysis
      1.   Choice of Law

The parties dispute whether Golden 1's arbitration agreement is governed by the California Arbitration Act ("CAA") or the FAA. See Opp'n at 6-8; Reply at 1-2.  Under the CAA, a Court may refuse to enforce an arbitration agreement if it determines (1) a party to that agreement is also a party to a pending court action arising out of the same transaction, and (2) there exists a possibility of conflicting rulings on a common issue of law or fact.  Cal. Civ. Proc. Code § 1281.2(c). Ware contends that the Court should use the discretion allowed by this provision to avoid the inconsistent results that might occur if part of Ware's putative class proceeds in federal court while others are compelled to arbitrate.  Opp'n at 6-9.  Golden 1 argues for application of the FAA, which does not afford this type of discretion.  Reply at 1-2.

At the core of this analysis lies the question of whether the arbitration agreement's choice-of-law clause incorporated California's procedural rules along with its substantive law. The answer, as Ware argues, turns upon the language of the arbitration agreement, and what it reveals about the contracting parties' intent.  Opp'n at 7-9.  Although the FAA typically preempts state laws that require a judicial forum to resolve disputes that parties have agreed to arbitrate, "it does not follow that the FAA prevents the enforcement of agreements to arbitrate under different rules than those set forth in the Act

4

itself." Volt Information Sciences, Inc. v. Board of Trustees of the Leland Stanford Junior Univ., 489 U.S. 468, 478-79 (1989).

Ware acknowledges that post-Volt courts have both incorporated and declined to incorporate the CAA's procedural rules, depending on the language of the choice-of-law clause. Opp'n at 6-8 (comparing Mount Diablo Medical Center v. Health Net of California, Inc., 101 Cal. App. 4th 711, 716 (2002)(allowing an arbitration agreement's choice-of-law clause to incorporate the CAA, where the clause covered "[t]he validity, construction, interpretation, and enforcement of the agreement") with Wolsey, Ltd. v. Foodmaker, Inc., 144 F.3d 1205, 1213 (9th Cir. 1998) (declining to incorporate the CAA where the clause stated that the agreement "shall be interpreted and construed under the laws of the State of California")). But Ware omits discussion of Preston v. Ferrer, supra—a Supreme Court case that is more recent than the ones discussed in his opposition. 552 U.S. at 558-62.

The arbitration agreement in Preston, like the one here, included both a California choice-of-law clause and an express selection of AAA rules. Id. at 361. The choice-of-law clause stated that the "agreement shall be governed by the laws of the state of California." Id. Preston argued that the broad language used in the choice-of-law clause necessarily incorporated California's procedural rules alongside its substantive law. Id. The Supreme Court disagreed, finding that "the best way to harmonize" the choice-of-law clause with the AAA requirement was to apply California's substantive law, but

5

reject the state's "special rules limiting the authority of arbitrators." Preston, 552 U.S. at 362 (quoting Matrobuono v. Shearson Lehman Hutton, Inc., 514 U.S. 52, 63-64). Ware does not argue that the arbitration clause here is meaningfully distinguishable from the clause in Preston. Nor does this Court find reason to arrive at a different result. The FAA applies.

Finding that the FAA governs does not, however, end the inquiry. Ware broadly argues for the Court to enforce the CAA, but more specifically, he contends that Section 1281.2(c) applies. Opp'n at 6. Because state law may be used to fill gaps left open by the FAA, the Court must also determine whether Section 1281.2(c) conflicts with the FAA. AT&T Mobility LLC v. Concepcion, 563 U.S. 333, 345-46 (2011).

Again, this Court turns to Preston. 552 U.S. at 357-58. There, the Supreme Court acknowledged that "[a] prime objective of an agreement to arbitrate is to achieve streamlined proceedings and expeditious results." Id. California's procedural rule, by effectively adding an exhaustion requirement to the arbitration proceeding, was inconsistent with this objective. Id. The Court found the rule would "at the least, hinder speedy resolution of the controversy." Id. at 358. The FAA, therefore, displaced it. Id. More generally, Preston held: to the extent a state law "lodg[es] primary jurisdiction in another forum" when the parties have previously agreed to arbitrate, it is superseded by the FAA. Id. at 349. Here, Section 1281.2(c) would grant the Court discretion to lodge primary jurisdiction in another forum; namely, this one. The Court finds that this rule conflicts with, and is superseded by,

6

the FAA.

2. <u>Enforceability and Scope of the Agreement</u>

Under the FAA, a district court must answer two questions when deciding a motion to compel arbitration: (1) whether a valid arbitration agreement exists and, if so, (2) whether the agreement encompasses the dispute at issue. <u>Chiron Corp. v. Ortho Diagnostic systems, Inc.</u>, 207 F.3d 1126, 1130 (9th Cir. 2000); <u>United Pub. Employees v. City & Cnty. of San Francisco</u>, 53 Cal. App. 4th 1021, 1025-26 (1997). Here, the answer to both questions is 'yes.'

a. <u>Enforceability of the Arbitration Agreement</u>

When an arbitration agreement purports to cover employment claims based on statutory or non-waivable rights, it must provide the five protections discussed in <u>Armendariz v. Foundation Health Psychare Servs.</u>, 24 Cal.4th 83, 97-99 (2000). The agreement must allow for (1) all substantive remedies that would be available in a court action; (2) a neutral arbitrator; (3) adequate discovery; (4) a written award or decision; and (5) a limitation of the costs imposed on the employee that are unique to arbitration. <u>Id.</u> As Golden 1 argues, the arbitration agreement here provides each of these protections. Mot. at 6.

Ware argues that the arbitration agreement is nonetheless unenforceable for two reasons. First, the provision covering Ware's claim is invalid, and must therefore be severed. Opp'n at 11-13. Second, the entire agreement is unconscionable. Opp'n at 13-15. Both arguments fail.

Ware first argues that the portion of the agreement requiring arbitration for "all disputes concerning employee's

7

employment" is invalid because, under California law, a PAGA claim may not be sent to arbitration. Opp'n at 11. See also Iskanian v. CLS Transportation Los Angeles, LLC, 59 Cal.4th 348, 384 (2014). When this invalid provision is severed according to the agreement's severability clause, he believes his claims are no longer covered by the agreement's text. Opp'n at 11-12. While creative, this argument lacks any support in the law. As Golden 1 concedes, an arbitration agreement only purports to cover disputes arising between signatories. Reply at 4-5. The PAGA claim does not arise between Ware and Golden 1; it arises between Golden 1 and the state. Hernandez v. Ross Stores, Inc., 7 Cal. App. 5th 171, 178 (2016). The non-arbitrability of a PAGA claim does not give this Court license to re-write the parties' agreement.

Ware separately argues that the arbitration agreement as a whole is unenforceable because it is unconscionable. Under California contract law, any contract may be unenforceable if it is unconscionable. Armendariz, 24 Cal.4th, at 113. Because California's unconscionability doctrine is applicable to all contracts, an unconscionable arbitration agreement will likewise be unenforceable under the FAA. See Concepcion, 131 S.Ct. at 1746. For a contract to be unenforceable because it is unconscionable, it must be both procedurally and substantively unconscionable. Id. The two components operate on a sliding scale where greater evidence related to procedural unconscionability lessens the need for evidence of substantive unconscionability, and vice versa. Id.

Here, the arbitration agreement has a low level of

8

procedural unconscionability. The Court disagrees with Ware's argument that Golden 1's failure to attach the AAA rules of arbitration amounts to undue oppressiveness or surprise. California courts have uniformly stepped back from this position, stating that failure to include the AAA rules may not, by itself, support a finding of procedural unconscionability. Peng v. First Republic Bank, 219 Cal. App. 4th 1462 (2013). Where procedural unconscionability already exists, a failure to attach the AAA rules only adds "a bit" to the existing unconscionability. Id. (quoting Zullo v. Super. Ct., 197 Cal. App. 4th 477, 485 (2011)).

California courts have, however, consistently found that adhesion contracts in the employment context generally contain some aspects of procedural unconscionability. Serpa v. California Sur. Investigations, Inc., 215 Cal. App. 4th 695, 704 (2013), as modified (Apr. 26, 2013). But these take-it-or-leave-it contracts are still enforceable unless the degree of substantive unconscionability is high. Id.

The Court also disagrees with Ware's contention that the arbitration agreement is substantively unconscionable because, hypothetically, it could impose "a unilateral obligation to arbitrate." Opp'n at 15 (citing Armendariz, 24 Cal.4th, at 117). Ware does not contend that the agreement currently imposes asymmetrical obligations on the parties. Rather, he urges that Golden 1 could later modify the agreement to create a unilateral obligation to arbitrate. The role of the Court is to enforce arbitration agreements "according to their terms," not to inject unconscionability where none yet exists. Volt, 489

U.S. at 476. Because Ware failed to show any substantive unconscionability, the Court finds that the arbitration agreement here is not unconscionable.

### b. Scope of the Arbitration Agreement

The text of the arbitration agreement covers "all disputes related to Employee's employment by Golden 1." Haines Decl., Ex. 1. This squarely covers all of the claims listed in Ware's complaint, except the PAGA claim. Compl. ¶¶ 91-153.

### 3. Supplemental Jurisdiction

A district court may decline to exercise supplemental jurisdiction when the court "has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c). Given all other claims are submitted to arbitration, concerns of comity and judicial economy both counsel this Court to dismiss the remaining PAGA claim. It is better suited for resolution in state court.

Lacking original jurisdiction over the only remaining claim in this action, the Court declines to exercise supplemental jurisdiction. The PAGA claim is dismissed without prejudice to refiling in state court.

## III. ORDER

For the reasons set forth above, the Court GRANTS Defendant's Motion to Compel Arbitration. Excluding the PAGA claim, Ware's federal and state law claims are submitted to arbitration. The PAGA claim is DISMISSED WITHOUT PREJUDICE.

IT IS SO ORDERED.

Dated: March 25, 2019

JOHN A. MENDEZ,
UNITED STATES DISTRICT JUDGE